UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID SHAND,

        Plaintiff,

v.

                                    Case No. 07-13100

WILLIAM C. MARTIN,               Honorable Julian Abele Cook, Jr.

        Defendant.

## ORDER

This matter pertains to claims by the Plaintiff, David Shand, who has accused the Defendant, William C. Martin, of (1) intentionally interfering with an existing business relationship and (2) committing acts of retaliation by inducing his employer to terminate him because he had exercised his fundamental constitutional right of free speech under the First Amendment, in violation of 42 U.S.C. § 1983.

I.

Shand was employed as a broadcaster in 2003 by a radio station, WTKA-AM 1050 ("WTKA") in Ann Arbor, Michigan which utilized his services in an "all-sports" format until he was terminated in April 2007. For much of his tenure with WTKA, he served as the primary host of "In the Locker Room With David Shand," ("Morning Show") which featured overall conversations, discussions, interviews, and listener commentary about sports in general.

During all of the times that are relevant to this controversy, Martin served as the Director

1

of the Athletic Department at the University of Michigan in Ann Arbor, Michigan ("Athletic Department").[1]

According to Shand, "the Morning Show" format was designed for him to be controversial and provocative, while the role of his co-host, Josh Vernier, would serve as the more mature and reasoned voice on the program.[2] Shand contends that the relationship between radio station and the Athletic Department became strained because of some on-air comments that he made about a professor at the University of Michigan.[3] He also posited that some Athletic Department employees had expressed their discontentment with him over some of his "on-the-air" comments which touched upon his divorce from one of their fellow-employees. Shand asserts that tensions seemed to increase and manifest themselves during the spring months of 2007 when the University of Michigan, through its Athletic Department, began to organize a charity golf outing in which celebrities and sports figures would play and, hopefully, raise monies for the benefit of the Mott's Children's Hospital.

In explaining Shand's involuntary termination of employment, WTKA representatives, Brian Cowan and Robert Bolak, point to the many complaints that the station had received as the result of his controversial comments and because of their fear that WTKA would incur liabilities

---

[1] Shand concedes that (1)WTKA is a private radio station which is independent of the Athletic Department at the University of Michigan, and (2) Martin does not exert any supervisory oversight over WTKA, its station manager (Robert Bolak), its program director (Brian Cowan), or any other WTKA personnel.

[2] Bolak testified at his deposition that "[Shand] has a really strong personality and we gave him our blessing to be himself on the radio[.]" (Bolak Dep. 72:9-10, June 27, 2008.)

[3] According to Vernier's affidavit, he was told by Jamie Morris, a subordinate of Martin, that Shand had "p____ some people off in the Athletic Department with some comments about a teacher." (Vernier Aff. ¶ 7.)

arising out of his provocative commentary.[4]  However, Shand contends that these explanations are purely shams for the truth, pointing to Martin who allegedly threatened the WTKA management with the termination of its right to broadcast University of Michigan football games unless its controversial employee was fired - an allegation that has been strongly denied.  Shand bases his charges on the strength of (1) an anonymous call that he allegedly received which presumably supports this claim about Martin, and (2) certain conversations that he and his wife, Alicia Ping, had with Cowan.[5]

Believing that the termination of his job at WTKA was unjust, Shand initiated the instant lawsuit.  On January 21, 2009, Martin filed (1) a motion for summary judgment[6] pursuant to Fed. R.Civ. P. 56(c)[7] and (2) a motion for sanctions under Fed. R. Civ. P. 11(c)(2).[8]  Shand filed a

---

[4] Bolak testified that he was also extremely sensitive to the "on-the-air" problems which arose from the controversial comments by national radio personality, Don Imus, and the potential liability effect upon the viability of WTKA.

[5] In Ping's deposition, she asserts that after Shand had been relieved of his duties at the radio station, Cowan told her that the job termination had occurred "because Bill Martin didn't like [him]." She also reported that Cowan acknowledged having an argument with Martin on the phone over her husband's employment at WTKA.  (Ping Dep. 39:18-21, January 9, 2009.)  In Shand's deposition, he maintains that, during his post WTKA days, Cowan was advised by Martin that "he had to make a choice between Michigan sports . . . and [Shand.]" (Shand Dep. 113: 6-8, August 28, 2008.)

[6] This is the third dispositive motion that has been filed by Martin in this case.  His earlier motions, which were submitted to the Court on September 7, 2007 and October 31, 2007, were denied.

[7] Fed. R. Civ. P. 56(c) states that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."

[8] Fed. R. Civ. P. 11(c)(2) provides that "[a] motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if

response in opposition to both of Martin's requests on February 19th.[9] Martin replied one week later, on February 26th.

II.

A party is entitled to a summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Faced with a motion for summary judgment, a court is obliged to review all of the evidence and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006). The trial court should not weigh the evidence or attempt to determine issues of credibility, though it may inquire as to the plausibility of inferences from circumstantial evidence. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 2004).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). If the moving party has met its burden of showing that there is no genuine issue of a material fact, the nonmoving party cannot merely rest upon the allegations within its pleadings. *See* Fed. R. Civ. P. 56(e). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is

---

the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion."

[9] In an order that bore the date of April 3, 2009, the Court granted Shand's two requests for an extension of time in which to file a response to Martin's motions.

a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citing Fed. R. Civ. P. 56(e)). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252.

In assessing the merit of a summary judgment motion, the Court may evaluate only admissible evidence. *Monks v. Gen. Elec. Co.*, 919 F.2d 1189, 1192 (6th Cir. 1990). Thus, the Court should not consider any hearsay statement or evidence that is irrelevant to the issues in dispute. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-69 (6th Cir. 1991).

In support of his motion, Martin has challenged the accuracy and validity of these accusations by Shand, believing them to lack any substance that would create a genuine issue of a material fact. He submits that the evidence which was determined by the Court to have created a genuine issue of a material fact in its order of May 28, 2008 (1) has been refuted by Shand or (2) is inadmissible according to the Federal Rules of Evidence.

Shand, on the other hand, in advancing his theory that there was a conspiracy between Martin and WTKA, argues that the statements by Cowan to Ping and Shand are admissible for consideration by the Court. Moreover, he submits that Jamie Morris and Cathy Roglitz have provided admissible testimonial evidence which, in his opinion, creates a genuine issue of a material fact and precludes the entry of a summary judgment as sought by Martin.

III.

Turning to the first issue upon which Shand bases his complaint, the Court notes that the maintenance of a viable cause of action for an intentional interference with a business relationship requires a showing of (1) the existence of a valid business relationship or expectancy that is not

5

necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. *Health Call v. Atrium Home & Health Care Servs.*, 706 N.W.2d 843, 848-49 (Mich. 2005) (citations omitted).

In addressing the second issue upon which Shand bases his complaint (i.e., retaliation claim under the First Amendment), the Sixth Circuit has opined that an aggrieved plaintiff must show that (1) he engaged in a protected activity, (2) an adverse action was taken against him which would deter a person of ordinary sensibilities from continuing his engagement in the protected conduct, and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 174 F.3d 378, 394 (6th Cir. 1999).

In order to prevail on his Section 1983 claim, Shand must establish that Martin acted "under the color of state law." *See* 42 U.S.C. § 1983. It should be noted that Shand's complaint is premised upon his belief that Martin had threatened WTKA with "no longer allow[ing the radio station] to carry University of Michigan football games" if he was not dismissed as an employee. (First Amended Compl. ¶ 24.)

Shand asserts that, inasmuch as Martin and the two management representatives of WTKA were "acting together to terminate [his] employment," Cowan's statements to Ping and Shand (*see supra,* footnote 5) are admissible as statements by a co-conspirator pursuant to Fed. R. Evid. 801(d)(2)(E).The co-conspirator exception to the hearsay rule states that "[a] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of a conspiracy." Fed. R. Evid. 801(d)(2)(E). The

6

Sixth Circuit Court of Appeals has held that this exception is applicable only if it has been "determined that the conspiracy existed, that the defendant was a member of the conspiracy, and that the co-conspirator's statements were made in furtherance of the conspiracy." *United States v. Payne*, 437 F.3d 540, 543 (6th Cir. 2006) (quoting *United States v. Gessa*, 971 F.2d 1257, 1261 (6th Cir. 1992) (en banc)).  In 1991, the Sixth Circuit opined that

> A civil conspiracy is an agreement between two or more persons to injure another by unlawful action. Express agreement among all the conspirators is not necessary to find the existence of a civil conspiracy. Each conspirator need not have known all of the details of the illegal plan or all of the participants involved. All that must be shown is that there was a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy that caused injury to the complainant.

*United States v. Murphy*, 937 F.2d 1032, 1039 (6th Cir. 1991) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  It should be noted that these statements alone are insufficient to establish a civil conspiracy.  Rather, they must be corroborated by independent evidence.  *United States v. Conrad,* 507 F.3d 424, 431 (6th Cir. 2007) (citations omitted).

However, Shand has failed to proffer any credible evidence that a conspiracy actually existed between Martin, Cowan, and Bolak.  Shand argues - without corroboration - that the order of the Court on May 28, 2008 which denied Martin's motion to dismiss establishes that there was a civil conspiracy and thus makes it the law of this case.  However, the text of this judicial order is clear, in that Shand's allegations were "*facially* sufficient to support a claim under § 1983 that he engaged in state action." (emphasis supplied).  Although Shand's claims were sufficient at that time to survive a dispositive motion prior to the completion of discovery, he must, at this stage in the litigation,  proffer a sufficiency of evidence with which to survive Martin's dispositive motion. *See* Fed. R. Civ. P. 56(e)(2) ("When a motion for summary judgment is properly made and supported,

7

an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must - by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial.")

Even though Ping's affidavit and Shand's deposition contain hearsay statements by Cowan which could, *arguably*, establish the existence of a civil conspiracy, these allegations have not been substantiated by other independent evidence on the record. Moreover, a fair reading of the challenged statements by Cowan do not support Shand's contention that they were uttered in furtherance of a conspiracy. Significantly, Cowan's alleged comments took place *after* the radio station had made its decision to terminate Shand from his position as a broadcaster at WTKA. Thus, even under this situation, Cowan's statements cannot be justifiably construed as having been made in furtherance of a conspiracy. Without (1) any independent evidence of a conspiracy and (2) other statements that would support of this theory, the Court concludes that Cowan's statements are inadmissible hearsay evidence and, thus, cannot be used to challenge Martin's motion for summary judgment.[10]

---

[10] During the oral hearing, Shand, through his counsel, argued that Cowan's statements were exceptions to the hearsay rule because (1) an agency relationship existed between Martin and WTKA (Fed. R. Evid. 801(d)(2)(D)); (2) Cowan's statements were excited utterances, as defined by the Federal Rules of Evidence (Fed. R. Evid. 803(2)); (3) Cowan's statements reflected his state of mind at the time of the utterances(Fed. R. Evid. 803(3)); and/or (4) they contained the requisite indicia of reliability (Fed. R. Evid. 807). However, the Court concludes that these arguments are without merit. Moreover and inasmuch as this evidence cannot be considered for its substance, it would also be inappropriate for the Court to consider it as impeachment evidence. *See Jacobsen v. Towers Perrin Forster & Crosby, Inc.*, 2008 U.S. Dist. LEXIS 21960, at *22-23 (D. Md. Mar. 20, 2008). Impeachment evidence may be used by an attorney to confront a witness during an examination at trial about a prior inconsistent statement. Fed. R. Evid. 613(a). Therefore, the Court may not consider these statements as impeachment testimony when ruling on a motion for summary judgment. *See Jacobsen*, 2008 U.S. Dist. LEXIS 21960 at *24.

In addressing the controversy arising out of a charitable golfing event in the Ann Arbor area, Shand submits that the decision by the radio station to preclude him from actively participating in the broadcasting responsibilities originated from Martin. This conclusion is based upon an alleged statement from Vernier who, through Morris, had confirmed the nexus between Martin and the decision by WTKA not to utilize Shand during this charitable golfing event.

The Court agrees with Shand that Martin's statements to Vernier are not hearsay because they were made by "a person [who was] authorized by [Martin] to make a statement concerning the subject." *See* Fed. R. Evid. 801(d)(2)(c)). Nevertheless, this evidence, while probative of whether Martin imposed his will upon Shand's participation in the charity event, does not address the more major issue; i.e., the justification, if any, of Shand's termination. When advancing this acknowledgment by Vernier, Shand has invited the Court to make a inferential step and, assume that inasmuch as Martin did not want him to broadcast the golfing event, he also wanted Shand to be fired from his position at WTKA. The Court declines to accept this invitation, holding that Morris' statements do not create a genuine issue of a material fact as to Martin's involvement in Shand's termination.

Shand also urges the Court to conclude that the testimony by Cathy Roglitz, the event manager for the charity golf outing, is sufficient to create a genuine issue of a material fact. Roglitz testified at her deposition on April 10, 2007 that she was told by Morris that he "needed to know that Dave Shand was not going to be allowed to broadcast from the event that day." (Roglitz Dep. 29:24 - 30:1, September 24, 2008.) According to Shand, Roglitz verified that Morris said to her,, "this was an important thing, this was just not . . . an off-the-cuff type decision and the decision had been made by Bill Martin." (*Id.* at 30:10-13.) However, as explained above, even if a jury believed this

9

evidence to be true, it would not establish that Martin had any involvement in Shand's termination.

Accordingly and when faced with Martin's motion and evidence in support of his application for relief, Shand has failed to proffer any admissible evidence which will establish that there is a genuine issue of a material fact to be resolved. Thus, Martin's motion for summary judgment is granted.

### III.

Martin also urges the Court to impose sanctions upon Shand and/or his attorney of record for their statements which he believes to have been false. Martin claims that sanctions should be imposed upon Shand for these false allegations; namely, that (1) he was aware of an email communication between Martin and the WTKA management and (2) Martin caused him to be terminated. Shand admits that he was unable to discover – despite his efforts and those of his attorney to obtain information from the telephone company, etc. – the identity of the anonymous caller who conveyed the information to him about the relationship between Martin and the radio station. However, Shand asserts that he accepted this information because of the specificity with which the caller referred to the events surrounding his dismissal from WTKA.[11]

> Pursuant to Fed. R. Civ. P. 11(b), when filing a pleading with the Court,
>
> an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

---

[11]Shand's attorney also asserted that he - like his client - had received numerous phone calls on September 17, 2007 from an unidentified caller with a blocked number who spoke about the relationship between Martin and WTKA.

Fed. R. Civ. P. 11(b)(3).  In the Sixth Circuit, "the test for imposition of Rule 11 sanctions remains, after the 1993 amendments, 'whether the individual's conduct was reasonable under the circumstances.'" *Union Planters Bank v. L & J Dev. Co.*, 115 F.3d 378, 384 (6th Cir. 1997) (quoting *Lemaster v. United States*, 891 F.2d 115, 118 (6th Cir. 1991)).

Based on Shand's representations at his deposition and those of his attorney in his brief, Shand's reliance on the anonymous caller's information appears to have been somewhat strained, but, nonetheless, reasonable under the circumstances.  Shand testified that the caller had very specific information about the issues and persons involved in this dispute.  Moreover, contrary to Martin's contention that the records never existed, Shand submitted a letter from two phone companies in response to his attorney's subpoena, both stating that they no longer possessed the requested records for the phone calls made during the identified time frame.  According to Shand, he attempted to procure the identity of the anonymous caller but was unable to do so.[12]  Thus, and under these circumstances, the Court, believing Shand's representations to be reasonable, will decline to impose sanctions upon him and/or his counsel.

IV.

Accordingly, for the reasons that have been stated above, the Court must, and does, (1) grant Martin's motion for summary judgment and (2) deny Martin's motion for sanctions.

IT IS SO ORDERED.

---

[12] Shand also claims to have subpoenaed all of the FedEx Kinko's stores within a five mile radius of Ann Arbor, Michigan because of the unidentified caller's representation that he had made copies of the purported emails involving Martin.  However, Strand acknowledges that this search also proved to be unsuccessful.

11

Dated: August 11, 2009  S/Julian Abele Cook, Jr.
       Detroit, Michigan  JULIAN ABELE COOK, JR.
                                                   United States District Court Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on August 11, 2009.

                                                   s/ Kay Doaks
                                                   Case Manager